

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 02-PWG-2692-S |
| ) | |
| ITT TECHNICAL INSTITUTE, ) | |
| ) | |
| Defendant. ) | |
| | |
| STEPHEN HOBBS, BARRY JEFFERSON, ) | |
| WEENA JONES, KIMBERLY McTYER, ) | |
| CARRIE MOORE AND CHELAVONNE ) | |
| SINGLETON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 03-PWG-0708-S |
| ) | |
| ITT TECHNICAL INSTITUTE, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

Plaintiff Weena Jones, an African American female, filed this action against the defendant, ITT Technical Institute, alleging race discrimination in employment in violation of Title VII and 42 U.S.C. § 1981. Specifically, she alleges that she was denied a promotion to the position of outside representative, that she was subjected to a sexually hostile work environment, and that she was subjected to retaliation. She seeks injunctive relief, back pay, punitive and compensatory damages, and nominal damages.

The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2. This case is before the court on ITT's Motion for Summary Judgment. (Doc. # 25).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such

>circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following pertinent facts are undisputed or, if disputed, viewed in the light most favorable to Jones, the nonmoving party. ITT is a private college system focused on technology-oriented programs of study operating over 70 ITT Technical Institutes in 28 states. Jones was employed with the Birmingham campus of ITT as Receptionist/Marketing Secretary effective May 2, 1994. She was promoted to Student Services Coordinator in January 1997 and promoted to an inside representative position effective April 3, 1997. Inside representatives are responsible for recruiting, enrolling and starting as ITT students "adults," that is, potential ITT students who are not high school students. She was promoted from entry level inside representative to step I inside representative in April 1998 and to step II inside representative, the position she currently holds, in April 1999.[1] In March 2002, Jones asked to be moved from an inside representative position to a an outside representative position. Outside representatives are responsible for recruiting, interviewing, enrolling and starting high school students as ITT students. Neither Jones nor anyone else was placed in an outside representative position at that time. Kimberly McTyer, an African-American female, and Steve Litvine, a white male, who were the only outside representatives at that time on the Birmingham campus were transferred to inside representative positions effective April 1, 2002. McTyer and Litvine were moved to inside representative positions at the direction of ITT

---

[1] The inside representative position is currently called adult representative and the responsibilities remain the same. The court will continue to refer to the position as inside representative to avoid additional confusion.

headquarters as part of a national trend to move to an all inside representative recruiting team. The outside representative position paid about $2,000 more per year than the inside representative position. Both McTyer and Litvine received salary decreases when they were moved to the inside position.[2/]

In May 2002 Jones received an unfavorable quarterly review from Director of Recruitment Jerome Ruffin, an African-American Male. Carrie Moore, an African American female, and Jones both received a "4" on the May 2002 evaluation while Cary Booth, a white male, received a "2," a better evaluation score. Jones admitted that she did not meet her objective requirements for that quarter and that she did not know whether Booth met his objective requirements or not. During the quarter in question, there had been a lot of changes involving the Exeter program which was used by ITT to manage the recruiting function. Jones and Moore did not believe they had been properly trained on these changes and Ruffin did not take this into account. Compensation is based on the annual review which is based on the four quarterly reviews. Jones received an overall evaluation of "3" ("Results at Standard") on the April 30, 2002 annual review for 2001-02.

Jones received a rating of a "3" on her 2003 annual review which Jones signed before the review was sent to headquarters. Headquarters contended that she should have received a "4" instead of a "3". Jones would ordinarily have needed 40 student starts for the years; however, she was told that due to her being out on maternity leave, she would only need 30 student "starts" for the year.

---

[2/]   Jones stated in her statement of the facts that Litvine's "pay did not increase" and cited to her own deposition testimony at pp. 98-99. (Jones's brief, p. 4, para. 17). Presumably she meant to state that his pay did not decrease when he was transferred from the outside to the inside position. In her deposition, she stated that she got information from Litvine that his pay did not go down. ( Jones depo., pp. 98-99). In his declaration, however, Litvine states that "Although I might have told other ITT employees differently at the time, my annual salary was reduced by $2,000 when I was moved to the Inside Representative position. (Litvine declaration, para. 2).

She had 32 starts.  Headquarters, however, maintained that she should have had 33 starts based on the amount of time she was out on maternity leave.

Jones testified that she feels that several leads, between one and ten, had been taken away from her; however, she identified only one lead by name. A lead is the name of an individual interested in applying to ITT.  It generally takes 12-20 leads in order to enroll one student.   Brian Johnson was a lead from Huffman High School.  Huffman High School was assigned to Jones.  Johnson was assigned to Cary Booth instead of Jones.

Prior to May 1, 2003, representatives were eligible for enhanced promotion based on the Demonstrated Capability Factor ( DCF).  Representatives were eligible to be evaluated for DCF qualification at the end of the calendar year following their two year performance evaluation.  The representative's DCF number was equal to 5% of earned revenue (tuition paid by students recruited by the representative) for ISRs during the preceding two year period and reflected both recruitment and retention results.  Target DCFs for each representative category and level were established by ITT headquarters on an annual basis.  The representative was eligible for promotion into a category for which the representative's DCF was equal to or greater than the midpoint of a target DCF for a higher level in the representative career ladder structure.  The DCF program was discontinued throughout ITT's campus effective May 1, 2003.  The only ITT Birmingham employee who ever received a DCF promotion was Steve Litvine.  No other ITT Birmingham employee's production was sufficient to obtain a DCF promotion.

Jones believed that she was due to receive a DCF bonus[3] in 2002 but was told by Ruffin that she had missed it by one point. She believes that it was unfair that she did not receive the DCF bonus "considering he told me I missed it by one point" and because she never received an explanation of how it was calculated. She testified that she believes that not obtaining the DCF bonus "could have been" related to her race. After she did not receive the DCF promotion, she learned that all of her active and graduated students since 2001 had been placed in "cold storage." Cold storage means that the students have been frozen in the Director of Recruitment account and those students have not been assigned to Jones's name. Jones's students were placed in the cold storage category on December 22, 2002 due to an apparent computer error possibly related to the Exeter system; however, according to Allen Rice, director of the Birmingham ITT campus, Jones received credit for her actual production in 2002 and 2003.

On one occasion, Ruffin said, "Ms. Jones, you look so good today, I could sop you up with a biscuit." Ruffin admitted making the biscuit comment but stated he was simply reciting lines from Richard Pryor. On another occasion Ruffin stated in a group of female representatives, including Jones, that if the women wore shorter skirts or stood on 280 with a short skirt, that they could get more commitments for students. Jones also overheard Cary Booth make a comment to Meredith Rowlen about Rowlen and April Wells being lesbians. On May 21, 2002, Jones, McTyer, C. Moore, Meredith Rowlen, and Lakeya Tuck met with Rice to complain about sexually inappropriate comments made by Cary Booth and Ruffin and Rice said he would look into it and take care of it. Both Ruffin and Booth received disciplinary memoranda in their personnel files, were required to

---

[3]   Jones refers to the DCF "bonus" rather than a DCF promotion. She has not submitted evidence that indicates that a DCF bonus exists apart from a DCF promotion.

6

complete sexual harassment courses, and were warned that future incidents of inappropriate behavior could lead to termination. Ruffin's course was to be completed on-line. Ruffin began the on-line course in sexual harassment but did not complete it prior to his termination. Booth attended a campus workshop in the area of sexual harassment.

*McDonnell Douglas* framework

Because Jones attempts to prove her case with circumstantial evidence, the burdenshifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) is applicable. Under this framework, Jones has the initial burden of establishing a *prima facie* case of discrimination. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), 522 U.S. 1045 (1998). If she proves a *prima facie* case of discrimination, the burden shifts to ITT to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its action; however, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Defendant's burden is "exceedingly light" *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). If the defendant carries this burden, the presumption of discrimination created by the *prima facie* case "drops from the case" and "the factual inquiry proceeds to a new level of specificity. *Burdine*, 450 U.S. at 255, n. 10. The burden then shifts to the plaintiff to present sufficient evidence, including evidence produced in support of the *prima facie* case "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but were merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, *McDonnell Douglas*, 411 U.S. at 804). "The ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff. " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

I.     Failure to promote claim

A plaintiff establishes a *prima facie* claim of race discrimination based on failure to promote by showing by a preponderance of the evidence that (1) she is a member of protected claim; (2) she was qualified and applied for the promotion; (3) she was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000).

Because no one was selected for the outside representative position in March 20002 and ITT moved its outside representatives to inside representatives, Jones cannot satisfy the fourth element of a *prima facie* case of race discrimination based on failure to promote. The court need not proceed any further with the *McDonnell Douglas* framework in light of her failure to establish a *prima facie* case.

II.    Evaluation, DCF and pay disparity claims

To establish a *prima facie* case of discrimination based on disparate treatment with respect to the evaluation, DCF and pay claims, Jones must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) similarly situated persons outside the protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Assuming that a *prima facie* case is established, the court then looks to the remainder of the *McDonnell Douglas* framework.

A.  The May 2002 evaluation

In *Akins v. Fulton County, Ga.*, ____ F.3d. ____, 2005 W.L. 1958333 (11th Cir., August 11, 2005), the Eleventh Circuit Court of Appeals held that a negative work evaluation that did not affect the plaintiff's compensation was not an adverse employment action. The May 2002 quarter evaluation did not affect her pay. Compensation is affected by annual evaluations. Immediately prior to the May evaluation, she received her annual evaluation which included the period encompassed in the May 2002 evaluation and she received a "3." She has not complained about the annual evaluation 2001-02.

Even if the negative May 2002 evaluation was an adverse employment action, Jones has not identified a similarly situated person outside of her protected class who was treated more favorably – that is, who failed to meet his or her objective requirements to the same extent as Jones and who received a higher rating. Jones acknowledges that she does not know whether Booth, a white male, failed to meet his objective requirements.

B.  Pay and DCF claims

Carrie Moore, an African American female, and Cary Booth, a white male, both have higher salaries than Jones. Compensation for ITT representatives is based on performance rather than tenure. Both Moore and Booth have had better overall production that Jones throughout their ITT employment.

Jones was told she missed the DCF promotion in 2002 by one point. According to Rice, her production has never met the requirements for a DCF promotion. No employee who has failed to meet the objective criteria has ever received a DCF promotion in Birmingham. Steve Litvine, the

only Birmingham ITT employee to ever receive a DCF promotion, qualified based on objective production data.

Jones has failed to establish a *prima facie* claim of discrimination with respect to pay and DCF promotion because she has not identified a similarly situated person outside of her protected class who was treated more favorably – that is, who did not meet the objective standards for pay increases or DCF promotions who nevertheless received them. Because Jones did not establish a *prima facie* claim of discrimination with respect to the evaluation, pay and DCF claims the court need not discuss pretext.

II. Hostile Work Environment Claim

In order to establish a *prima facie* case of a sexually hostile work environment, a plaintiff must show:

> (1)   that she belongs to a protected group;
> (2)   that she has been subject to unwelcome harassment;
> (3)   that the harassment must have been based on a protected characteristic of the employee, such as [sex];
> (4)   that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and
> (5)   that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999), 529 U.S. 1068 (2000).

ITT argues that Jones cannot show the fourth element – that the work environment was "permeated with 'discriminatory intimidation, ridicule and insult' that was 'sufficiently severe or perverse to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Plaintiff identified one comment directed to her, the biscuit comment; one comment directed to her as one in a group of women, the short skirt comment; and one comment directed to another woman accusing her [not Jones] and a third woman [not Jones] of being lesbians.[4/]  The requirement that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment has both an objective and subjective component.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).  While Jones may have subjectively perceived the environment to be abusive, she has failed to present evidence that would allow this court to find that a reasonable person would find the environment to be hostile or abusive.  In reviewing the objective component, the court should look at four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Mendoza*, 195 F.3d at 1246.  There were only three comments witnessed by or directed to Jones.  The conduct was not severe inasmuch as it was not accompanied by gestures, touching or extreme vulgarity.  The comments were not physically threatening nor humiliating but rather merely offensive utterances.  Finally, the comments did not unreasonably interfere with Jones's job performance.  The harassment was not sufficiently severe or pervasive to alter the terms and conditions of employment.

III.    Retaliation claim

To establish a *prima facie* case for retaliation, Jones must show that "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there was a causal link

---

[4/]  While Jones refers in her brief to sexual comments that were directed to other plaintiffs and to incidents that Rice testified to, there is no evidence that Jones was aware of the other comments and incidents and such incidents cannot be considered in considering either the objective or subjective components.

between h[er] protected activity and the adverse employment action." *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001).

ITT argues that Jones cannot show a *prima facie* case of retaliation because she failed to show that she suffered an adverse employment action and that there was a causal link between the protected activity and the adverse employment action.

Jones alleges that she complained about race discrimination in April 2001 and again in October 2001 and that she complained of sexual harassment in May 2002 and filed an EEOC action in June 2002. She maintains that after each complaint, she suffered an adverse employment action. One alleged adverse employment action was apparently the taking of leads which she contends resulted in bad evaluations. Another adverse action was the placement of Jones's students in cold storage which affected her numbers, evaluations, and pay. Jones has not identified what other adverse actions were taken.

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her or employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh*, 120 F.3d 1236, 1300 (3rd Cir. 1997)(citation and internal marks omitted). Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality ... to be cognizable under the anti-retaliation clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

*Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), *cert. denied,* 531 U.S. 1076 (2001). Under this definition the taking of the leads would not itself be an ultimate employment decision.[5]

---

[5] The court notes Jones has identified only one lead that was allegedly taken.

Although Jones states in brief that the taking of leads resulted in bad evaluations, she has complained of only one unfavorable evaluation – the evaluation of May 2002. This evaluation however was neutralized by the fact that on April 30, 2002, her annual evaluation (which included the period encompassed in the bad evaluation) resulted in a score of 3. Compensation is affected by the annual evaluation rather then the quarterly evaluation. Jones does not allege that the "bad" evaluation affected her compensation, terms, conditions, or privileges of employment.

Jones argues that the placement of students in cold storage was done in retaliation; however, the evidence appears to be that the placement was a computer error due to changes to the Exeter system. While Jones argues that the placement of students in cold storage affected her numbers, evaluations and pay, she has not presented evidence of this. The students were placed in cold storage in December 2002. The listing of her students in cold storage had no effect on her performance evaluation. ITT's exhibits B and C to ITT's consolidated reply indicate that although Jerome Skinner and Stephanie Nollie were on the cold storage list run in January 2003, she received credit for both Skinner and Nollie on the Rep Compensation Plan run on March 15, 2004 based on a milestone date of November 30, 2003. According to Rice's uncontradicted affidavit, Jones received credit for her actual production in 2002 and 2003. Jones has not specifically identified benefits of employment that she did not receive based upon the alleged taking of leads and the placement of her students in cold storage.

Jones has failed to establish a *prima facie* case of retaliation.

Based on the foregoing, ITT's Motion for Summary Judgment (doc. #25) is due to be granted. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 20th day of September, 2005.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE