FILED

2005 Sep-20  PM 01:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 02-PWG-2692-S |
| | ) |
| ITT TECHNICAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| STEPHEN HOBBS, BARRY JEFFERSON, | ) |
| WEENA JONES, KIMBERLY McTYER, | ) |
| CARRIE MOORE AND CHELAVONNE | ) |
| SINGLETON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 03-PWG-0708-S |
| | ) |
| ITT TECHNICAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION

Plaintiff Carrie Moore, an African American female, filed this action against the defendant,

ITT Technical Institute, alleging race discrimination in employment in violation of Title VII and 42

U.S.C. § 1981.  Specifically, she alleges that she was racially discriminated against based on

evaluations and leads and that she was subjected to a sexually hostile work environment.  She seeks

injunctive relief, back pay, punitive and compensatory damages, and nominal damages.

The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C.

§ 636(c) and LR 73.2.

This case is before the court on ITT's Motion for Summary Judgment. (Doc. # 22).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule

> facilitates the dismissal of factually unsupported
> claims prior to trial.

898 F.2d at 1532.

The following pertinent facts are undisputed or, if disputed, viewed in the light most favorable to Jones, the nonmoving party.  ITT is a private college system focused on technology-oriented programs of study operating over 70 ITT Technical Institutes in 28 states.  Carrie Moore started working for ITT as an inside representative on January 4, 2000 at an annual salary of $31,600.  Inside representatives are responsible for recruiting, enrolling and starting as ITT students "adults," that is, potential ITT students who are not high school students.  Ms. Moore received an accelerated promotion from inside representative Step I to Step II.  Thereafter, she received a pay increase and a promotion to Senior Rep I in November 2003.  She is currently employed by ITT.

Cary Booth was hired as an inside representative on December 13, 1999 at an annual salary of $31,000.  Moore believes that leads were not equally distributed.  She contends that Jerome Ruffin "fed" leads to Meredith Rowlen and Booth.  Carrie Moore believes that she lost between four and six call in and walk in leads to Rowlen (a white inside representative hired effective January 28, 2002) but she cannot identify them.  The receptionist, fellow plaintiff Singleton, was responsible for assigning call-in and walk-in leads.

Moore believes Booth was assigned between three and four leads that should have been assigned to her but she cannot identify the leads.  Ms. Moore discussed the lost leads with Human Resources Manager Lisa Cardona and told Cardona she would provide a list of lost leads.  She never provided the list even though she knew Cardona could not investigate without the list.  She contends

that Jerome Ruffin took two enrollments from her and gave them to Cary Booth.  Ms. Moore does

not know whether Cary Booth had been working the two enrollments.

Carrie Moore alleges that Jerome Ruffin tampered with her enrollment statistics based on

Ruffin's statement that he *could* tamper with enrollment statistics; however, she has no evidence that

he *actually did* tamper with statistics.

Ruffin testified that he never tampered with enrollment statistics.

Moore's fiancé died in May 2001 and this affected her job performance.  Ms. Moore

complains about the "4" rating she received on her 2001-2002 annual performance appraisal.  Ms.

Moore's start goal for 2001-2002 was 59.  She had 39 starts between July 1, 2001 to June 30, 2002

but believes she should have had 41 because of the two enrollments that were allegedly given to Cary

Booth.

Moore believes that she should not have received a "4" rating if she had more than 40 starts

even though she acknowledges that the rating is based on how her actual performance compares to

her goals.  Ms. Moore's show rate for 2001-2002 was 46.3%.  Ms. Moore's overall rating of "4"

would not have been raised to "3" even if she had 42 starts because the ratings, including her show

rate, were less than expected.  For 2002-2003 her production exceeded her goals and she received

a "2" rating.

Carrie Moore, McTyer, Jones, Meredith Rowlen and Lakeya Tuck met with Rice in late May

or June 2002 to complain about comments allegedly made by Booth and Ruffin that they considered

inappropriate.  Ruffin asked Moore if two could fit in her shirt.  Ruffin informed the female

representatives including Moore, McTyer and W. Jones, that they would close more students if they

wore shorter skirts.  He also told McTyer and Moore that he would "sop them up like a biscuit."

Ruffin told Moore that her pants were so tight that he could fit in them.

Weena Jones also alleges that Ruffin told her that he would "sop [her] up with a biscuit."

Ruffin's comments were all made before June 2002 and the comments were made within one month

of each other.  Booth allegedly called Meredith Rowlen a lesbian and said that April Well's breast

fell out of her shirt.

The 1999 version of ITT's Handbook, which is provided to each ITT employee, contains

ITT's Equal Employment Opportunity policy which provides, in part, "Employment selection and

related decisions are made without regard to race, [...] sex [...] or any other reason prohibited by

law."  ITT also distributes its freestanding Anti-Harassment and Anti-Discrimination Guidelines to

all ITT employees.  ITT's policy prohibiting harassment and discrimination is also prominently

displayed at the Birmingham campus in the employee break room.

Rice investigated the complaints, confronted Booth and Ruffin regarding the alleged

comments and reported the allegations to ITT headquarter.  In June 2002, Lisa Cardona, ITT's

Human Resources Manager responsible for the Birmingham campus traveled to Birmingham to

further investigate the allegations.  Cardona met with McTyer, Carrie Moore, Jones, Rowlen, Tuck,

other female employees as well as Ruffin and Booth on or about June 27, 2002.  Booth admitted

making the lesbian comment and confirmed that he had apologized to the female employees during

and/or immediately after the meeting during which the comment was made.  Booth denied

commenting that Wells' breast fell out of her shirt.  When interviewed by Cardona, Wells knew

nothing about the breast comment and no other employee could confirm that the comment had been

made.

Booth was disciplined, required to attend sexual harassment training and warned that future incidents could lead to termination.  No other alleged incidents of alleged inappropriate behavior attributable to Booth had been reported to ITT.

Rice and Cardona also confronted Ruffin.  Ruffin admits making a "biscuit" comment but contends that he was simply reciting lines from Richard Pryor movies.  Ruffin was disciplined, required to complete an on-line professional development course in sexual harassment and warned that future incidents of inappropriate behavior could lead to termination.

Ruffin began the on-line professional development course in sexual harassment but did not complete it prior to the termination of his employment.  No further instances of alleged sexually inappropriate behavior attributable to Ruffin were reported to ITT at any time after Rice's meeting with the Representatives.

Following the investigation, Rice met with the complaining female employees to follow up on their allegations and informed them that the matter had been investigated and handled.  He did not, however, inform them of the specific personnel actions that had been taken.

*McDonnell Douglas* framework

Because Carrie Moore attempts to prove her case with circumstantial evidence, the burdenshifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) is applicable.  Under this framework, Jones has the initial burden of establishing a *prima facie* case of discrimination.  *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998). If she proves a *prima facie* case of discrimination, the burden shifts to ITT to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its action;

6

however, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Defendant's burden is "exceedingly light" *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). If the defendant carries this burden, the presumption of discrimination created by the *prima facie* case "drops from the case" and "the factual inquiry proceeds to a new level of specificity. *Burdine*, 450 U.S. at 255, n. 10. The burden then shifts to the plaintiff to present sufficient evidence, including evidence produced in support of the *prima facie* case "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but were merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, *McDonnell Douglas*, 411 U.S. at 804). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

I.      Evaluation, leads and enrollment claims

The claims concerning the leads, enrollment statistics and evaluation are all interrelated. Carrie Moore argues that losing leads (and presumably the alleged taking of the two leads that were given to Booth) contributed to her bad evaluation. To establish a *prima facie* case of discrimination based on disparate treatment with respect to the evaluation, leads and enrollment statistics, Ms. Moore must show that (1) she is a  member of a protected class, (2) she suffered an adverse employment action, and (3) similarly situated persons outside the protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Assuming that a prima facie case is established, the court then looks to the remainder of the *McDonnell Douglas* framework.

In *Akins v. Fulton County, Ga.*, ____ F.3d ____, 2005 W. L. 1958333 (11th Cir. 2005), the Eleventh Circuit Court of Appeals held that a negative work evaluation that did not affect the plaintiff's compensation was not an adverse employment action.  Carrie Moore, however, alleges that her raise was less as a result of receiving a "4" instead of a "3."  While loss of leads or enrollments would not be an adverse employment action,[1] clearly a bad evaluation affecting her pay would be.  Even assuming that Moore had had 42 starts (this would give her the benefit of 1 start based on 10 lost leads and 2 starts allegedly taken from her and attributed to Booth), her overall rating still would have been a "4".  Ms. Moore's evaluation was based on her objective production. She does not attempt to identify a comparator outside of her protected class; however, ITT argues that Booth, a white inside representative, is the only potential comparator outside of Moore's protected class.  ITT argues that Booth is not similarly situated because he started 62 students out of a goal of 59 and had a 75.6 % show rate for the 2001-02 review period while Moore started only 39 (or 42) students with a show rate of 46.3%.  Because she cannot identify a person outside of her protected class with a comparable poor performance record rated higher, her *prima facie* case must fail.  Because Moore did not establish a *prima facie* claim of discrimination, the court need not discuss pretext.[2]

---

[1]    An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."  *Robinson v. City of Pittsburgh*, 210 F.3d 1236, 1300 (3d Cir. 1997) (citation and internal marks omitted).  Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality ... to be cognizable under the anti-retaliation clause."  *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001)..

[2]    Although ITT addressed a promotion claim, this claim was not addressed by Moore's argument and is therefore deemed abandoned.  Although Moore refers in her brief to "write-ups" which led to bad evaluations (doc. #36, p.23) in deposition Moore testified that the July 2002 evaluation was what she referred to as write-up.  (C. Moore depo., 148); therefore, this court need not address "write-ups."

II.      Hostile Work Environment Claim

In order to establish a *prima facie* case of a sexually hostile work environment, a plaintiff

must show:

(1)      that she belongs to a protected group;

(2)      that she has been subject to unwelcome harassment;

(3)      that the harassment must have been based on a protected characteristic of the

employee, such as [sex];

(4)      that the harassment was sufficiently severe or pervasive to alter the terms and

conditions of employment and create a discriminatorily abusive working

environment; and

(5)      that the employer is responsible for such environment under either a theory of

vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v. Borden, Inc.*,

195 F.3d 1238, 1245 (11th Cir. 1999) *cert. denied,* 529 U.S. 1068 (2000).

ITT argues that Moore cannot show the fourth element – that the work environment was

"permeated with 'discriminatory intimidation, ridicule and insult' that was 'sufficiently severe or

perverse to alter the conditions of the victim's employment and create an abusive work

environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Moore identified three comments by Ruffin directed specifically to her: (1) the biscuit

comment, (2) the comment about two could fit in her skirt and (3) the comment about her tight pants.

She also identified one comment by Ruffin directed to her as one in  a group of women, the short

skirt comment.  Finally, she identified one comment by Booth which she heard that was directed to another woman accusing her [not Moore] and a third woman [not Moore] of being lesbians.[3/]  The requirement that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment has both an objective and subjective component.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).   While Moore may have subjectively perceived the environment to be abusive, she has failed to present evidence that would allow this court to find that  a reasonable person would find the environment to be hostile or abusive.  In reviewing the objective component, the court should look at four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Mendoza*, 195 F.3d at 1246.  There were only five comments witnessed by or directed to Moore.  The conduct was not severe inasmuch as it was not accompanied by gestures, touching or extreme vulgarity.  The comments were not physically threatening nor humiliating but rather merely offensive utterances.  Finally, the comments did not unreasonably interfere with Ms. Moore's job performance.  The harassment was not sufficiently severe or pervasive to alter the terms and conditions of employment.

Based on the foregoing, ITT's Motion for Summary Judgment (doc. #22) is due to be granted.  A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

---

[3/]      While Moore  refers in her brief to sexual comments that were directed to other plaintiffs and to incidents that Rice testified to,  there is no evidence that Moore was aware of the other comments and incidents and such incidents cannot be considered in considering either the objective or subjective components.

As to the foregoing it is SO ORDERED this the 20th day of September, 2005.

_____

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE