FILED
2005 Sep-20 PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 02-PWG-2692-S |
| | ) |
| ITT TECHNICAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| STEPHEN HOBBS, BARRY JEFFERSON, WEENA JONES, KIMBERLY McTYER, CARRIE MOORE AND CHELAVONNE SINGLETON, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 03-PWG-0708-S |
| | ) |
| ITT TECHNICAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION

Plaintiff Chelavonne Singleton, an African American female, filed this action against the defendant, ITT Technical Institute, alleging race discrimination in employment in violation of Title VII and 42 U.S.C. § 1981. Specifically, she alleges that time cards were falsified, that white employees received preferential treatment, that she was denied the pay of and promotion to the position of a marketing secretary and that she was terminated in retaliation for the filing of an internal complaint. She seeks injunctive relief, back pay, punitive and compensatory damages, and nominal damages.

The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

This case is before the court on ITT's Motion for Summary Judgment. (Doc. # 26).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Rule 56, *Federal Rules of Civil Procedure*.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such

> circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following pertinent facts are undisputed or, if disputed, viewed in the light most favorable to Singleton, the nonmoving party.

ITT is a private college system focused on technology-oriented programs of study operating over 70 ITT Technical Institutes in 28 states. Singleton was employed with the Birmingham campus of ITT as receptionist for the marketing department from January 17, 2000 until March 24, 2003. Director of Recruitment (DOR) Daryl Gonzales told Ms. Singleton that she would become marketing secretary after one year if she had satisfactory performance and satisfactory attendance.

The receptionist's responsibilities include answering the phone for the campus, greeting customers and taking messages. Singleton was the only administrative or clerical person employed in the marketing department at the Birmingham campus and was the Birmingham point of contact for other ITT campuses.

Singleton testified that her secretarial duties included "doing the reports for the representatives, doing reports to go to headquarters and distributing leads." Singleton does not know whether each ITT campus had a marketing secretary, however, Allen Rice, Director of the Birmingham ITT campus, stated in his affidavit that many ITT campuses do not have a marketing secretary.

ITT's attendance policy provides in relevant part:

> ITT Educational Services, Inc. and subsidiaries ("ESI") depend upon all of its employees to maintain regular, predictable attendance. Consistent and timely employee attendance and punctuality are extremely important, since absences or tardiness can affect student education, productivity, and efficient operations. <u>Regular and predictable attendance and punctuality are essential job functions.</u>
>
> Employees must adhere to the work schedules established by their supervisors
>
> ***
>
> An employee's unscheduled absences place an unfair burden on ESI and the employee's co-workers and should be avoided. <u>Excessive absences, including late arrivals and early departures, will result in discipline, up to and including termination. In addition, failing to provide proper notification of late arrivals and unscheduled absences is likewise unacceptable.</u>

(Emphasis added).

Singleton was absent from work on several occasions during 2001 after she had exhausted all of her leave and was counseled regarding her attendance on at least two occasions. She was also counseled about chronic tardiness. Singleton believes that she was probably tardy about 20 times during 2001.

Singleton believes that representatives Cary Booth, a white male, and Meredith Rowlen, a white female, violated ITT's attendance policy and were not disciplined. She is not aware of any employees other than herself, Booth and Rowlen who she believes violated ITT's attendance policy. Singleton, as receptionist, had set hours. Because representatives are required to work weekends and evenings, they work a "floating" forty hour work week. According to both Rice and former DOR

Jerome Ruffin, neither Booth nor Rowlen violated the attendance policy or had similar attendance problems similar to Singleton.

Rowlen worked as an inside representative for ITT from January 28, 2002 until she began a maternity leave on September 30, 2002. Rowlen did not return to work at ITT following her maternity leave. Singleton thinks Meredith Rowlen called in sick five or six times and left work sick three or four times.

No one received marketing secretary pay while Singleton was employed by ITT. Weena Jones, another plaintiff in this action, is the only person to ever hold the marketing secretary position at ITT's Birmingham campus. Ruffin told Singleton that she would be considered for the marketing secretary position if she improved her attendance. Ruffin told Singleton that he knew that she was doing her job and "the only thing that hindered me was my attendance."

Jesse Johnson, Ruffin's successor as DOR, told Singleton she needed to work under him for six months for him to evaluate her performance before she could be promoted to marketing secretary. Singleton was never promoted to the marketing secretary position because of her attendance and because the Birmingham campus did not have a marketing secretary position available during the time that Singleton was employed.

Singleton contends that she received bad evaluations after she filed an EEOC charge. Singleton testified that she did not agree with the "4" rating on her 2000 evaluation because "The only thing ... was the problem with me ..., you know, my attendance or my punctuality, but my job, I was doing my job." (Singleton depo., 149). She alleges that Reeves had just taken the DOR position and was not in a good position to review her work.

According to Ruffin the only deficiency in Singleton's performance was her serious attendance issue and failure to comply with ITT's attendance policy. No other Birmingham ITT employee had attendance problems similar to Singleton's from 2000 until 2003. Singleton refused to sign her January 17, 2002 performance appraisal on which she received a "5" (Results Not Acceptable) rating. Singleton admits she continued to have attendance problems as of January17, 2002 and that she called in sick after she had exhausted all of her sick and vacation time.

Rice and Ruffin told Singleton they would review her performance again in six months. Singleton received another review on June 18, 2002. Her attendance had improved, and she received an overall "3" rating.

Singleton contends that Lori Pannel changed Singleton's time cards at Rice's direction but she testified that she did not believe this was because of her race. Singleton identified two time cards that she alleges Pannel changed. One time card was changed to add vacation time so that Singleton would be paid while she was out. The other time card credited Singleton for two sick days when she was out sick from work even though she did not want to use sick days. Both changes were to Singleton's benefit in that they resulted in her being paid while absent. Singleton knew in January 2001 that these time cards had been changed.

After Jesse Johnson became DOR he told Singleton a joke that she found offensive. Johnson also looked at female clients and students inappropriately. Singleton and other female workers decided to complain to the ITT headquarter's human resources manager concerning Johnson's actions.

On March 12, 2003, Singleton sent an e-mail to Human Resources Manager Lisa Cardona at ITT headquarters in Carmel, Indiana. Singleton sent the e-mail from Bridget Owens' computer.

6

Singleton did not sign her name to the e-mail.  In addition to the "from" line, the e-mail contains a detailed electronic "signature" providing Owens's contact information.  (Singleton, Ex-15).

The e-mail stated:

> I have been asked by the women in our marketing department to request a conference with you regarding the inappropriate behavior that has taken place against us here.  I as well as my fellow employees would like to sit down with you ASAP! to discuss our concerns because we feel that we are not here to be subjected to this type of behavior.  I look forward to hearing from you.
>
> Sincerly [sic],
>
> Concerned Women of 082

Based on the information provided in the e-mail, Cardona believed that Owens authored the e-mail.  Pursuant to ITT policy, Cardona called Owens after receiving the e-mail on March 13, 2003 to investigate the concerns set forth in the e-mail.  Singleton knows that Cardona called Owens the next day because Singleton took the call.  Although the e-mail noted "I look forward to hearing from you," Singleton did not tell Cardona that she actually sent the e-mail.  *Id*.

If Singleton wanted to report the alleged conduct without making it appear as though Owens had sent the report but without identifying herself, she could have anonymously reported the conduct by calling ITT's ombudsman.  Singleton met with John Hawthorne on March 13, 2003 to discuss the concerns expressed in the e-mail and told him that she, rather than Owens, sent the e-mail.

ITT terminated Singleton's employment effective March 24, 2003 for violating ESI Work Guidelines which provide:

> Any of the following offenses by an employee will result in the immediate termination of the employee's employee with ESI:

7

Section A

1. Falsification or misrepresentation of information, employment application or ESI records, or disregard of any ESI policy or procedure.

*McDonnell Douglas* framework

Because Singleton attempts to prove her case with circumstantial evidence, the burdenshifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) is applicable. Under this framework, Singleton has the initial burden of establishing a *prima facie* case of discrimination. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998). If she proves a *prima facie* case of discrimination, the burden shifts to ITT to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its action; however, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Defendant's burden is "exceedingly light" *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). If the defendant carries this burden, the presumption of discrimination created by the *prima facie* case "drops from the case" and "the factual inquiry proceeds to a new level of specificity. *Burdine*, 450 U.S. at 255, n. 10. The burden then shifts to the plaintiff to present sufficient evidence, including evidence produced in support of the *prima facie* case "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but were merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, *McDonnell Douglas*, 411 U.S. at 804). "The ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

I.   Failure to promote claim

A plaintiff establishes a *prima facie* claim of race discrimination based on failure to promote by showing by a preponderance of the evidence that (1) she is a member of protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000).

Singleton has failed to establish a prima facie claim based on failure to promote because no one was selected for the marketing secretary position because ITT did not seek anyone for that position.

ITT further argues that Singleton was not promoted to the marketing secretary position because of her attendance and tardiness problems. Although Singleton was told at the time she was hired that she would become Marketing Secretary after one year if her performance and attendance were satisfactory, she admitted that she continued to have attendance problems as observed on the June 16, 2002 evaluation review. She has not presented evidence of pretext–either that the reason given should not be believed or that, in light of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998).[1]

---

[1] Singleton argues as evidence of pretext: The plaintiff clearly performed the qualifications of the marketing secretary position. The defendant used the plaintiff to get the work done without paying or promoting her. This is not evidence that would cast doubt on the credibility of the reasons given or that would indicate discriminatory reasons were more likely behind the decision that the stated reasons. Specifically, the "evidence of pretext" by Singleton could apply equally to a white employee who was unhappy with her responsibilities and lack of advancement.

II.	Time card and preferential treatment claims

To establish a *prima facie* case of discrimination based on disparate treatment claims, Singleton must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) similarly situated persons outside the protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Singleton argues that her time cards were changed. The time cards identified in deposition were changed to reflect that Singleton took vacation or sick leave at times when she was not at work. The result was that she was paid as though at work. Singleton argues that other time cards were changed to substitute vacation hours for hours that she had actually worked. While she cites to her deposition testimony, the deposition testimony (Singleton depo., pp. 161-62) referred to does not support Singleton's argument. In her deposition testimony, she did not indicate disagreement with the substance of the changes to the time cards.[2/] Due to her failure to show that she suffered an adverse employment action, she has not established a *prima facie* case of discrimination based on changes to her time cards.

ITT interpreted Singleton's preferential treatment claim to be based her belief that representatives Cary Booth and Meredith Rowlen violated ITT's attendance policy. Singleton cannot establish a *prima facie* case based on this claim as she has not shown that Booth and Rowlen, both white, were similarly situated to her.

---

[2/] It appears that Singleton objects to the fact that the time cards were changed at all – even if the correction was correct. A mere change to her time card would not be an adverse employment action unless it resulted in less pay or a decrease in sick leave days or vacation days based on a credit of sick or annual leave days on days that she actually worked.

> The plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects." *Id*. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. *See Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004), quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994)).

Booth and Rowlen were representatives whose functions were to recruit students to attend ITT. As representatives, Booth and Rowlen were on occasion required to work at night and on weekends. They worked a "floating" schedule of forty hours that included night and weekend work. Due to their floating schedules, they sometimes arrived late or left early, making up the hours lost during the regular work day at night and on weekends. Singleton, as receptionist, was required to work a standard work week covering the front desk for set hours from Monday through Friday.[3/] Because of the differences in the schedule demands of the representative and the receptionist, Booth and Rowlen were not similarly situated to Singleton.

Because Singleton has failed to establish a *prima facie* case based on either the time card or preferential treatment claim, it is unnecessary for the court to proceed to the legitimate, non-discriminatory reason and pretext steps of the *McDonnell* analysis.[4/]

---

[3/]   Although Singleton may have felt that she should not be required to work set hours if she preferred to work more flexible hours or if she could finish her work in less time, it must not be forgotten that her functions included answering the telephone and greeting visitors during office hours. If she was not present during office hours, she was not performing all of the functions of her job as receptionist.

[4/]   While ITT argued in a footnote it was also entitled to summary judgment based on any claim based on her evaluations, Singleton does not even allude to the evaluations in her arguments in response to the motion for summary judgment. Nevertheless, to the extent that Singleton might argue that her evaluations were discriminatory, she has failed to establish a *prima facie* case of disparate treatment based on evaluations as she has failed to identify anyone similarly situated to her in terms of her attendance problems and outside of her protected class who was treated more favorably than her on evaluations. Moreover, in deposition, Singleton specifically stated that she was not raising a claim that the evaluations were discriminatory because she was

III.     Termination in retaliation for protected activity claim

To establish a *prima facie* case for retaliation, Singleton must show that "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between h[er] protected activity and the adverse employment action." *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001).

Singleton alleges that she was terminated on March 24, 2003 in retaliation for her March 12, 2003 complaint of sexual harassment on behalf of all of the women in her department.[5/] The complaint alleging sexual harassment made to ITT by Singleton on March 12, 2003 by letter to Ms. Cordova would be "protected activity" within the meaning of the Opposition Clause of Title VII. See *E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000). Under the opposition clause an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Singleton's termination occurred less than two weeks after her letter of complaint. Based on the temporal proximity between the letter of complaint and the termination the court is satisfied that Singleton established a causal link.

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her or employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City*

---

black. She also stated in deposition that the only evaluation she was challenging was the evaluation she received after filing the EEOC charge and that she believed that evaluation was in retaliation for having filed her EEOC charge. Singleton does not address this claim in her discussion of retaliation – probably because the evaluation received after the EEOC charge had been filed was the best evaluation that she had received while employed at ITT.

[5/]    ITT construed the retaliation claim to be based upon the June 13, 2002 EEOC charge, nine months before her termination. However, Singleton does not base her retaliation claim on the EEOC charge.

12

*of Pittsburgh*, 120 F.3d 1236, 1300 (3rd Cir. 1997)(citation and internal marks omitted). Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality ... to be cognizable under the anti-retaliation clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

*Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), 531 U.S. 1076 (2001). Clearly, being terminated is an adverse action.

ITT argues that it had a legitimate, nondiscriminatory reason for terminating Singleton's employment – that is, her fraud and misuse of ITT's computer equipment in sending the e-mail from another employee's computer. Singleton argues that ITT's reason was pretextual because she had permission to use Bridget Owens's e-mail. There is no evidence, however, that Singleton had permission to make it appear that Owens rather than Singleton sent the letter.[6]

Based on the foregoing, ITT's Motion for Summary Judgment (doc. #26) is due to be granted. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 20th day of September, 2005.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

---

[6] Because Singleton does not present a disparate treatment argument concerning her termination, the court considers any such claim abandoned.